Good morning. May it please the Court, my name is Jim McCarthy. I represent the province of Marinduque, and I intend to reserve three minutes for rebuttal. The province's first point is very simple. Patrickson v. Dole Foods governs here. There is no subject matter jurisdiction, and the case should be remanded on the authority of that case. The second point is equally simple, although the facts are more complicated, and that is that this Court should expressly vacate the district court's forum nonconvenience rulings because they are unprecedented and they do a great deal of violence to forum nonconvenience law in this country. Particularly damaging or worrisome is the holding that is made in the district court that the only issue was whether the alternative forum proposed by the defendants is to be considered. And that was followed then by an equally troubling consequence, which was the refusal then to consider the Philippines the natural forum, the site of events in the case. And the result of it all was that a forum nonconvenience, which begins as an equitable doctrine intended to alleviate the consequences of bad forum choices and unfair forum choices by a plaintiff, becomes a vehicle for defense forum shopping. And we think these are pretty serious aspects to this ruling, and we hope the Court will address them. As to subject matter jurisdiction, I think things are pretty simple and straightforward, and I'd like to go there first. The district court incorrectly held that it had federal subject matter jurisdiction based on the active state doctrine. While the removal petition spoke in terms of the federal common law of foreign relations, there was no tie to that other than later discussions of the active state doctrine. Was this court addressed the subject matter jurisdiction issue or as a result of syndicant? Can we now, even though syndicant came down after the district court ruled on subject matter jurisdiction, do we have the power and authority to bypass it, so to speak, and go directly to the forum nonconvenience issue? I think not, Your Honor. In terms of the chronology that you mentioned, there were actually three discussions of subject matter jurisdiction in the district court. The first was prior to syndicant, where the motion to remand was denied. The second was the forum nonconvenience opinion, which was then followed by a reconsideration opinion. In the reconsideration opinion, which was post-syndicant, the judge reaffirmed his ruling that there was no ñ that there was federal subject matter jurisdiction based on the active state doctrine. So even after syndicant, the judge reaffirmed it. I know that the district court passed on the subject matter jurisdiction issue. I guess my question refocused is in light of syndicant, can we obviate addressing that issue and just deal with the forum nonconvenience issue? I don't think so, Your Honor. In the face of a ruling that was predicated on the court's assertion of authority over this, not just once but twice. But why does it matter if what the Supreme Court has said is when you have this situation of threshold issues that we no longer have, what we learned in law school, which is you must do subject matter jurisdiction and then you get to the others, they seem to have thrown that out and they say, you know what, if you can get to the other one easier and you have some tricky jurisdictional questions, take the easy ones. And so why wouldn't we first look and see whether we thought there was an abuse of discretion on the forum nonconvenience? I think the short answer is because syndicant itself says that shouldn't happen in this case. Syndicant is part of a triumvirate, as the Court knows, of opinions by Justice Ginsburg, in which she tried to give, and a unanimous court gave the district courts a lot more latitude in dealing with questions that were, as a practical matter, better dealt with in less, you know, higher, less unrealistic ways. In syndicant, the court said, as Your Honor indicated, that in some circumstances, that it's fine for the judge not to deal with subject matter jurisdiction before dealing with forum nonconvenience. However, as in each of those three opinions, at the end of the opinion, the judge said, this is not the normal rule, this is for the case that fits it. And the criteria that were laid out at the end of syndicant in that discussion were that if the subject matter jurisdiction issue is difficult, and if the forum nonconvenience issue is easy, then this may be an appropriate case. However, it also says, and Judge Sandoval did this, he looked at subject matter jurisdiction before he looked at the question of forum nonconvenience. So he had no choice at the time. I mean, at the time that the district court rendered its initial decision, syndicant was not decided, so it had no alternative but to address the subject matter jurisdiction issue, right? And I'm not sure they had no alternative, because the courts were split over it at that particular point in time. But the fact is that the court then looked at it post-syndicant and said, no, that's the right ruling. I believe the act of state supports this case, and that's why I have federal jurisdiction. And then in the reconsideration opinion, also reaffirmed its rulings on forum nonconvenience. Are you saying that it was an error, it would be an error to look at forum nonconvenience first, because under Sinochem, subject matter jurisdiction is easy and forum nonconvenience is hard? Is that what you're saying? Because we can obviously affirm the district court on any basis established by the record. I think that if Sinochem is to govern what this court did or the district court did, then it has to govern it by its own terms. And its own terms are that subject matter jurisdiction should be addressed first, if in the normal case. But what you say is this is a simple case. Subject matter jurisdiction is a simple case. This is the well-pleaded complaint rule. That's it. That's what Patrickson says. Now, the district court listed three or four incidents where it thought it would have to rule on whether an official act of the sovereign was valid. And so it said that raises a sufficient Federal question, an embedded Federal question that would provide it with Federal subject matter jurisdiction. Now, why is that not accurate? It's not accurate for a couple reasons, Your Honor. First of all, if you consider the complaint as a whole, it's not about the acts of state. It's about the acts of a mining company that caused great damage to the island and to its people. That's what the story is completely. Won't the district court have to rule on whether the Marcus regime was invalid in its partnership in Marcopper and its issuance of permits and its preventing its environmental organization agency from stopping the activities? No, Your Honor. It won't. And there are a couple reasons for that. First of all, because, as I say, the case is not about the government's acts. It's about the acts of the mining company. Secondly, these are the acts of President Marcos. And as the complaint itself points out, these are in his own economic self-interest, because he extorted a large percentage of the mine as a benefit for doing the deal with Placer Dome. Now, there are all sorts of cases in the Ninth Circuit and elsewhere which point out that the acts of state defense and the acts of state issue does not exist in these Marcos cases where he acted for self-interest. In addition to that ‑‑ Could I just interject here? I'm sorry. I mean, isn't at least one of the allegations that the Aquino regime also prevented the environmental agency from taking appropriate steps? Only later is there a reference to the Aquino regime. But that's not decisive. It's for a complaint. The question in the well-completed complaint rule is, does the court have to rule on an essential issue of the plaintiff's causes of action? The Supreme Court reaffirmed that issue yesterday. And so it needs to be ‑‑ we need to stay focused on that issue. Is there an essential portion of the plaintiff's complaint against the mining companies that has to be ruled on? Now, in addition to Marcos, I think we have to remember that the acts of state is a judicial creation intended to protect the foreign policy prerogatives of the country. This is not a situation where there's a U.S. and a Philippine difference as to the evils of President Marcos or the evils of what he did or the plunder that he took on. There's no interest to be protected here by the judiciary. Let me ask this. I just want to clarify something. We have the well‑pleaded complaint principle that we ought to be dealing with. I think we acknowledge that. Your complaint, it seems to me, reads basically allegations of negligence, breach of contract, what we would consider common law state torts if this was a domestic case, but I guess it's under the Philippine law that you're talking about. You don't really rely upon whether or not permits were granted or not granted, whether permission was given or not given to dump into a particular locale. That has nothing to do with your well‑pleaded complaint, as I read it, or am I misreading it? No, you're reading it correctly, Your Honor. Our complaint is about the tragic general depredation, three cataclysmic events that occurred, the dumping into Calenton Bay, the trashing of the Mopoc River with a dam bursting, it collapsed, it was under their management and construction, and in addition, the Boak River disaster when they ‑‑ Even if the permits were given, it doesn't really give license to the mining company to pollute the environment. No, not at all, Your Honor. I would be shocked to see a permit that said, So if there are these issues that are being raised in this case in terms of the activities of the government arguably in granting permits or not, that would be by means of defense as an affirmative defense, which has nothing to do with the well‑pleaded complaint, I take it? Exactly, Your Honor. And that's the point that was reaffirmed yesterday. So there's not going to be an active state issue in this case. There aren't any pleaded. And because that's the sole basis for jurisdiction here, there is no jurisdiction. There is no subject matter jurisdiction. I have to say one or two words about form non‑convenience, which are really important. The key thing to keep in mind here is ‑‑ It can be argued that the form non‑convenience issue is more complicated in terms of having to balance all these various interests and factors of the public and the private interest than the simple act of state issue, which the district court may have gotten wrong. That's exactly right. And that's why this is the standard case that Sinachem referred to in the end. This is the simple subject matter jurisdiction. The more difficult form non‑convenience should be decided in that order. Now, Judge Sandoval did do that. I mean, the reality is that as a practical matter, if you would win on the act of state, then you're back in Nevada State Court and you have these very same issues, right? But under different law and the exclusion of the Philippines, which is the critical problem in the form non‑convenience issue where the judge issued a new rule of law that foreclosed any consideration to the full of Philippines, that I do not believe will occur. Tell me why you think he foreclosed. Can you go back to the Philippines now? Well, conceivably ‑‑ Assuming you had a claim and maybe unsuccessful ones, but what precludes you from going today? Conceivably, we could, Your Honor, but our point is ‑‑ So then what's the harm? I mean, in other words, the ultimate ruling is Nevada is not the place for you. But why couldn't you just pick up and go right to the Philippines? You can't get process in the Philippines to this day? I'm sorry, Your Honor. You can't serve process and you can't get jurisdiction in the Philippines over the defendant? No, Judge Sandoval held that was another question. That's why you can't go back to the Philippines? No, it's not that. It's just we're a perfectly valid forum. We did what you're supposed to do. We followed the defendant to where they were. We sued them. It's a standard case. And we did it because they had fled the Philippines. I understand that. But I guess I don't understand why you can't sue them the Philippines today. It is entirely possible, Your Honor, that we could do that. But we chose an entirely valid forum. Right. But in other words, that's why I'm having a little trouble understanding why you're complaining about the judge not dealing with the Philippines. Because what the judge did is say you can't come to Nevada, and in the scheme of things, British Columbia is a legitimate forum. But nothing there that I read precludes you from today simultaneously, tomorrow, picking up and suing in the Philippines. I mean, you have to run through all the procedural gauntlets, but not this judge didn't preclude you from that, did he? No, but this judge precluded the consideration of the Philippines in the forum nonconvenience analysis, and that totally and irreparably skewed it. Because even the judge's own findings specified in great detail the superiority of the Philippines as a forum. I'd like to reserve the rest of my time if I could, Your Honor. Thank you. May it please the Court. Jerry Gansfried for the defendants. The core of this case is the fact that it's a non-U.S. plaintiff suing non-U.S. defendants on non-U.S. causes of action. None of the claims stated in the complaint as causes of action are stated under U.S. law. No acts are alleged to have taken place in the United States, and there's no injury alleged in the United States. Where in the complaint do you define the act of state? Well, in a couple of places. I think in many respects the terminology implication of foreign relations of the United States is a more accurate description. Some of the cases use act of state to. But in court it says, you know, that simply because something implicates foreign policy does not mean, you know, that it implicates act of state or any of the other related doctrines of international law. So maybe it would be helpful to me if I could look at the complaint and match this up. I'd like to be able to do that in two steps, and I certainly want to go through. Well, let me just start with step one, which is to point me where in the complaint to look. In the complaint, absolutely. Let me start first with the prayer for relief. And the complaint that I'm looking at is the original state complaint that the one that was removed. So it's at the starts of page, well, the notice of removal is at 3017. The complaint itself is at 30, I think, 22 of the excerpt of record. Prayer for relief is on 3075. They ask for an injunction from the court directing Placer Dome, which was the only defendant at the time that the case was removed, to undertake and complete, you know, skip down, the environmental cleanup of the affected areas, restore the natural resources of Maranduke, including, not limited to, a couple of itemized places, talks about cleaning up rivers, downstream coastal areas, and surrounding areas. Environmental cleanup must include, among other things, ensuring potable water in the region. That an injunction directing activity within the sovereign territory of another country, dealing with its navigable waters, dealing with the provision of potable waters, is something that goes, it's not may implicate foreign relations of the United States. It directly goes to questions of foreign relations. I mean, the act of state doctrine, as defined in Kirkpatrick, says, it's a rule of decision, the acts of foreign sovereigns within their own jurisdiction shall be valid. So there's no Federal, I'm having trouble finding a Federal question. There's no Federal cause of action. You concur with that, correct? There's no Federal cause of action. They state no cause of action. If you're looking for some sort of embedded Federal question, as in Grable, that's substantial, and that's actually disputed. That would implicate this rule of decision that the acts of foreign sovereign within their own jurisdiction shall be valid. I don't see how the prayer for relief implicates that rule of decision. There may be a political question, so some sort of abstention doctrine might be applicable, but that's not raising a Federal question. Well, but the initial question of as between a State court and a Federal court, which one is the appropriate forum for deciding the scope of the act of State, the scope of the Federal question, namely foreign relations, is properly a Federal court issue. But that can be decided by the State court as well as the Federal court. It doesn't have to be exclusive Federal jurisdiction for removal. It simply has to present a Federal question that comes within the jurisdiction of the Federal courts. Are there other parts of the complaint that you would direct us to other than the prayer? Oh, yes. Well, let me go back to the initial overturning in the 60s of a presidential decree from the 1930s, which is initially what allowed mining within the province. From 1932 through 1936. They're not asking that that be overturned. I'm just asking that, where do you say that, you know, they're seeking the invalidation of a permit? And even if that were the case, would that be an affirmative defense? But it's not simply something that we are bringing brand-new to the case as a defense. It is something that is pleaded in the complaint and is necessarily part of the complaint. What paragraph is that? The, okay, in the proclamation, that's paragraph 7, which is on page 3028. Marcos overturned the 1932 presidential proclamation. Bear in mind, and I'll go through some other paragraphs as well, but bear in mind, after 1980. Paragraph 7? Paragraph 7? Yes. During most of those 30-plus years, that paragraph? No, I'm sorry. If I've got the right page, I may have given the wrong paragraph. Oh, paragraph 41. I'm sorry. On page 3028. So, I mean, Marcos did his way by overturning the Forest Reserve's protective status. I mean, that's like saying, you know, in 1945, following the war, the president did X. It's an historical allegation. It doesn't have anything to do with implicating the government. That was the action that permitted mining in the province. So what? So what? The claim is that the mining should not have happened in the province, that the mining should not have happened in a particular way, and that, of course, gets into the various other questions that come up, not only involving decisions by President Marcos, but also the agency, the NWAPCC, the PAB, and the complaint itself directly refers to actions and decisions by President Marcos, President Reyes, President Arroyo, and President Aquino. So what's the federal question there? What exactly is the federal question? The federal question is that the case goes directly to the question of, should the United States have any role in the regulation of extraterritorial activities attributed to foreign companies in a third foreign country? But, you see, that's the United States isn't having any role. The question is, is there a federal question that can put you in federal court? And I don't understand how, as you talk about it, that doesn't really implicate a federal question. When the United States isn't involved, you have citizens and the republic suing this mining company saying you basically polluted and pillaged our area. That's the claim. It goes directly to foreign relations. Let me point to paragraph 193 of the complaint, page 3054, where the very subject of this environmental issue that is the underlying issue in the case was the subject of discussions between Philippine President Arroyo and the Canadian prime minister in 2002. So in terms of implicating the foreign relations of the United States, the question is, will the court decide that the United States should eject itself into those issues of intergovernmental, involving two foreign governments, intergovernmental foreign relations issues? I mean, that's actually, you're framing it as a jurisdictional question. It's either does the federal court have jurisdiction, which is a question before us, or should the government abstain from considering this question under political question doctrine, you know, Baker v. Carr. So it's not a federal question arising from the complaint. It's the subject matter jurisdiction question that we face at the threshold. I want to do two things. One, there's another aspect of foreign relations law that comes into this, and that is that we have a case in which the province is challenging actions, the province of Marinduque is challenging actions taken by the national government of the Philippines over a period of many years. That's the closest I've heard to an after-state problem. Well, I hope I began by saying there were multiple ones, and I've been trying to go through them. But they're not seeking to invalidate those actions. Look, let me quote you, if I may, about Patterson. It seems that that's the Ninth Circuit case that we have to focus on, even though it's not factually directly on point. The language of Judge Kosinski, I think, is important for us to discuss. My sense of Patterson is that the Ninth Circuit has taken issue with some of the more liberal decisions by the sister circuits, like the Second Circuit, God help me. And Judge Kosinski says, no, you know, we're not going to broadly construe the act of state doctrine. We're going to take a more circumscribed view of it. And Patterson clearly says, and I'm quoting, that nothing in the plaintiff's complaint turns on the validity or invalidity of any act of a foreign state. I focus on that. I don't see where we have here, under the well-pleaded complaint rule, any attack on the validity or invalidity of any act of a foreign state. Let me go further. Patterson put some meat to the bones. It contrasted situations where the act of state doctrine is used affirmatively as the basis of a claim, such as where, and he gave examples, the claim raises as a necessary element to question whether to honor the request of a foreign government. We don't have that here. Or where a plaintiff has established title as an element of his conversion claim, and title rests on a foreign expropriation decree like the Cuba case, perhaps, in situations where the act of state doctrine serves as a defense. It dichotomizes the difference when, you know, you're using, you know, the issue of the foreign state, so to speak, scenario as a sword, compared to when it can be raised by way of defense. And it just seems to me, when the Ninth Circuit goes on, to then say that we're not going to be as generous, perhaps, as the other circuits, we're going to take a more circumscribed view of the act of state, that I think it puts you out of the loop here, as I read the Patterson case. Do you wish to comment on that? Well, in Patterson, among other things, you did have state law claims alleged under Hawaii law. It's actually the same. I understand that. But the language here and the concept behind it and the jurisprudence there, I think, is very relevant here. Well, it is. It's the Ninth Circuit. And so that is what we're going to be applying. But in Patterson, you had a somewhat, well, an entirely different situation, and it's narrowing to the act of state doctrine. And I think that what I'm suggesting is that the notion of foreign policy, foreign relations law of the United States, is a somewhat broader concept than that. Let me also get to what the plaintiff had to say. We talk about the master of the complaint and the well-pleaded complaint. The plaintiff repeatedly told the court that there was no subject matter jurisdiction issue, that the court could find subject matter jurisdiction. Page 3014, they tell the court in the statement on remand. Right. That's the one thing that parties can't do is fix jurisdiction issues. No, no. But they can describe their complaint. And they described their complaint in a way that made it quite clear that foreign relations issues, active state issues, are in the complaint. They said that, in fact, on page 2185, where they said the reason they chose state court over Federal court was to avoid the time and money-wasting controversies over whether the action could be made to fit within the jurisdiction of the Federal courts. That goes more to the foreign nonconvenience and Sinochem issue. But I mentioned it in this context as well. They also ---- The indulgence of my colleagues, I think we spent a significant amount of time exploring the issue of jurisdiction. And you only have a minute and 25 seconds left. And I'm curious about something. You guys are big boys. You've been around the block a long, long time. This is a long-pending piece of litigation. I don't think we can fully understand all the nuances in terms of strategy by brilliant counsel here. But it seems to me that you wanted to get into the Federal system and get away from the jaws of the Nevada state court for one principal purpose, to then use the Federal jurisdiction to apply for your foreign nonconvenience. Is this a matter of trial strategy? Is that what you planned all the time to do? And is that why you wanted to invoke Federal jurisdiction? You don't think the Nevada court can make that determination? There are determinations. You came here, in other words, for that sole strategic reason, correct? To be able to put forth before a Federal court your foreign nonconvenience argument. I just wonder whether that was your strategy. Well, you're ---- I don't want to say it was not my decision, but it was ---- there was prior counsel in the case. So if you're asking for what was the strategy, I ---- Well, listen to me. You wasted all the time. You could have made the same foreign nonconvenience article before the state court, perfectly competent to make that determination. Instead, you decided to come here, invoke a question of jurisdictional issue and then move to foreign nonconvenience. But bear in mind that at the time of the removal, SINICAM had not been decided. So the question of what the ---- It doesn't matter. You still, you know, were going to move for nonconvenience without SINICAM. That's what they did. And second, we ---- there is the time limit for removal. In the face of the complaint, and if I can quickly refer to page ---- You don't have to remove. In other words, you preferred Federal court for whatever reason. Yeah. 2084, 2085, the plaintiff's comment to the district court, it says, The question is whether Placer-Dohm's claim of foreign relations subject matter jurisdiction has met its burdens. Has it met its burdens? Yes and no. Placer-Dohm does hit on some good points, including that the ---- Let me get to the bottom of the thing on the foreign nonconvenience. One of the primary complaints of the plaintiffs is that the district court ignored the Philippines in the calculus. What is your response to that? The two-step process for foreign nonconvenience is, first, is there an adequate alternate forum? The Philippines doesn't satisfy that standard because there's no jurisdiction over the defendants in the Philippines. He says that there is jurisdiction now, though. I don't understand. It's been tried once, correct? Pardon? In terms of is the Philippine court ruled there's no jurisdiction? In the Natal case, the decision by the, not these plaintiffs, but a civil case relating to some of the same allegations in the Philippine courts in the Natal case, which is in the executive record, I think, at three different places, the court says that you can't make Placer-Dohm a defendant in the case. Placer-Dohm is not there. So you're willing to try this case in the Philippines? It seems that that's the obvious correct venue here. Everything happened there. We're not subject to jurisdiction. Would you be willing? The plaintiffs, the judge did not transfer this case anyway. I understand. The plaintiffs can file tomorrow in any court that has jurisdiction over the defendants. I guess I just wonder, would you be willing to have this case tried in the Philippines? I'm just curious. It's really not a question of willingness. The Philippines courts have decided that there is no jurisdiction, that Placer-Dohm cannot be served. We could possibly give you a choice. It seems to me clearly the right venue is the Philippines. The question is how or if at all you should get there. If we were to say, look, your choice is to go to Nevada or wherever, or go to the Philippines, and you can go to the Philippines if you wish to. I guess you have a jurisdictional problem. You'd have to accept service or process there or whatever. But we can possibly condition that. Would you be willing to do that? There's no case that in which a court has compelled a defendant to consent to jurisdiction in a form in which there is no jurisdiction. We can give you a choice. I think this gets directly to a problem that the Supreme Court was addressing in the Piper Aircraft case. The utilization and the disutilization of United States courts as a tool, as a mechanism, for coercing foreign defendants who are not U.S. defendants, but foreign defendants, to be coerced to go to jurisdictions over which, one, there is no jurisdiction over them, and, two, it has already been determined by the local jurisdiction that there is no, that the jurisdiction doesn't exist. We've been trying to escape process for 40 years here. I think we've got your points in mind. Are there any other questions? Thank you. Your Honor, a couple of quick bullet points. In Natala, it really was not that there was no jurisdiction. It was that the lawyer, after many, many requests by the court, had not bothered to produce any proof of jurisdiction. So there was never a contested issue of fact. And that's the only case. Other cases, there are ongoing efforts to serve them. How they'll turn out, I don't know. I can't say to this court. The Piper, the reference to Piper at the end, triggered something in my mind. Piper says, you can't just go to Pennsylvania and sue the company's headquarters, because all the events occurred in Scotland. That's our case here. They want to go to the corporate headquarters, except if you read the two opinions, Judge Sandoval got the corporate headquarters wrong. He got it wrong in his original opinion. Then, in our motion for reconsideration, we pointed out he'd gotten it wrong, that, in fact, they were in Ontario, not British Columbia. And he said, okay, I'm still sending it there, because British Columbia may have an interest in the court of an Ontario corporation. That's the sole basis for sending it to Canada. Piper rejected that whole proposition. It said send it to the site of some events, which is what we've proposed. Well, nobody needs to send it anywhere. No, you're right. And you already told me that, that you can go to the Philippines of your own accord and take your chances with, you know, jurisdiction. There is one problem there, Your Honor, and that is that, as a matter of Philippine law, that they have an anti-form-shopping rule that says if there's a pending case in another jurisdiction that they are not going to accept the filing of a Philippine case at the same time. Okay, but let's assume, just for talking purposes, that the district court were affirmed here, then you wouldn't have a case, a pending case in another jurisdiction, correct? Right. And that would obviate any problem with going to the Philippines. Of course, our very strong argument is that for both subject matter reasons and for the form-not-convenience reasons, this court should not affirm. And, in fact, the precedents that would be set forth in the form-not-convenience context would be really quite dangerous going forward in the future. There are serious, serious problems with a rule that restricts a district court's ability to apply equity. That's what this rule does. The defendant, by the nature of the motion, gets to say what the district judge will consider or not consider. Form-not-convenience is about equity. It's about equity towards the defendants. It's about equity towards the plaintiffs. And what's supposed to happen is you're supposed to come in first and say, this forum, Nevada, is inequitable. Well, I provided the court with a record copy of something where they brag about the close and long and deep associations with Nevada, but that's not what they're telling the courts. They're saying it's inconvenient to be in Nevada. Then you're supposed to say, okay, let's weigh all the factors, all the factors. All is in Piper. All is in every bit of litigation. All the factors weren't weighed here because the judge believed, incorrectly, I don't think there's a bad motive to it, that he had to consider only what the defendant suggested. But that leaves the range of equity in the hands of the defendant. And in this case, and in most cases involving multinational corporations, that means because multinational corporations have many possible operations they can point to, that they have a wider range than a typical corporation of saying, no, you have to sue me there. We sued Barrick in the center of its operations. You'll see that from this. It's the biggest single place that they operate in the world. Canada is trivial by comparison. It is simply a headquarters that could be placed anywhere. The analogy is to an offshore corporation. Thank you. Thank you, Your Honor. Thank you. The case has been argued and submitted. Provincial Government v. Placer-Jones. Thanks both counsel for your argument this morning.
judges: McKeown, Ikuta, Block